UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| KELLY S., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:20-cv-1620-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## **INTRODUCTION**

Plaintiff Kelly S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## **BACKGROUND**

On December 21, 2017, Plaintiff protectively filed her DIB application alleging disability beginning July 3, 2017 (the disability onset date), due to a variety of musculoskeletal ailments, stomach ulcers, and depression. Transcript ("Tr.") 21, 93, 206. Plaintiff's claim was denied initially on April 5, 2018 (Tr. 109-13), after which she requested an administrative hearing (Tr. 119-20). On October 8, 2019, Administrative Law Judge John Benson (the "ALJ") conducted a

video hearing from Lawrence, Massachusetts. Tr. 21, 42-85. Plaintiff appeared and testified from Buffalo, New York, and was represented by Rose G. Proto, an attorney. Tr. 21. James L. Soldner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on January 2, 2020, finding that Plaintiff was not disabled. Tr. 21-35. On October 5, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's January 2, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 2, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2. The claimant has not engaged in substantial gainful activity since July 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; degenerative joint disease of the left knee and shoulder; degenerative changes in her bilateral feet with bunions; osteoarthritis of her left ankle, status post left ankle fracture (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[1] except she requires the option to alternate positions at one[-]hour intervals, allowing her to remain in the new position for up to five minutes before returning to her previous position. She can never perform any overhead reaching, but [she] can frequently reach at and below shoulder height. She can never climb ladders, crawl, or kneel. She can occasionally stoop and crouch, and frequently balance. She can have no exposure to workplace hazards or vibration. She can engage in frequent handling.

6. The claimant is capable of performing past relevant work as a Credit Loan Collections Supervisor and Collections Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. 21-35.

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

4

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on December 21, 2017, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 35.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to consider Plaintiff's mental impairments at step two, and therefore, according to Plaintiff, the ALJ erred in the balance of the sequential evaluation by failing to incorporate any mental limitations into the RFC finding. *See* ECF No. 10-1 at 11–16. Plaintiff takes issue with the ALJ's consideration of the psychological opinions in the step two section of his decision and argues that the ALJ did not mention the opined mental limitations or consider any limitations stemming from Plaintiff's psychological impairments beyond step two. *See id*.

The Commissioner argues in response that the ALJ's RFC finding was supported by substantial evidence. *See* ECF No. 12-1 at 13-22. Further, argues the Commissioner, the ALJ properly evaluated the opinion evidence in determining that Plaintiff's mental impairments were not severe at step two; properly considered the evidence of Plaintiff's mental functioning when formulating Plaintiff's RFC; and properly determined that Plaintiff was able to perform her past relevant work at step four. *See id*.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the ALJ's decision and the entire record, the Court finds that the ALJ cited substantial evidence in support of his conclusion and properly evaluated the medical evidence pursuant to the new regulations applicable to claims filed after March 27, 2017. The Court also finds that the ALJ properly determined that Plaintiff's mental impairments were not severe at step two, and furthermore, he considered the evidence of Plaintiff's mental impairments when formulating the RFC. Accordingly, Plaintiff's challenges to the final decision of the Commissioner are without merit.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective

evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on December 21, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she

considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ properly based his determination that Plaintiff retained the RFC to perform sedentary work on the assessments of state agency psychological consultant L. Blackwell, Ph.D. ("Dr. Blackwell"), and consultative psychological examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), as well as the generally unremarkable treatment records and notable lack of mental health treatment records, other than from Plaintiff's primary care physician. Tr. 25-27.

First, the ALJ properly evaluated the opinion evidence in the record in determining that Plaintiff's mental impairments were not severe at step two. At step two, a claimant must first produce evidence that she has a medically determinable physical or mental impairment(s), which "must be established by objective medical evidence from an acceptable medical source" rather than symptoms, diagnoses, or a medical opinion. 20 C.F.R. § 404.1521. When a claimant produces evidence of a medically determinable impairment, the Commissioner then determines whether the impairment or combination of impairments is severe. *Id.*

An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522. *See* 20 C.F.R. § 404.1520(c) (If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.); Social Security Ruling ("SSR") 96-3p, Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181, at *1 (SSA July 2, 1996); *Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (identifying no error in ALJ's step two finding of

non-severe impairments, where plaintiff failed to furnish any medical evidence showing how his impairments limited his ability to work).

The Commissioner's Rulings further explain that an impairment "is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (step two is applied to screen out *de minimis* claims). After a careful review of the record, the Court finds that ALJ correctly assessed Plaintiff's severe impairments at step two.

First, the ALJ reasonably found the opinion of state agency psychological consultant Dr. Blackwell to be persuasive, noting that it was supported by and consistent with the record. Tr. 25. Dr. Blackwell concluded that Plaintiff's mental impairments were at most mild, and were not severe, given that Plaintiff did not seek mental health treatment throughout the relevant period. Tr. 25, 95. Although Plaintiff testified at her administrative hearing that she recently met with a counselor on two occasions, she could not remember the counselor's last name. Tr. 25, 67-68. The ALJ also noted that Leif Leaf, Ph.D. ("Dr. Leaf"), another psychological consultant, affirmed Dr. Blackwell's determination. Tr. 25, 580-81.

The ALJ also reasonably found the opinion of consultative psychological examiner Dr. Ippolito to be partially persuasive. Tr. 26. Dr. Ippolito found that Plaintiff had no evidence of limitations in understanding, remembering or applying simple directions and instructions; using reason and judgment to make work-related decisions; interacting adequately with supervisors, co-workers, and the public; maintaining personal hygiene and appropriate attire; and demonstrating awareness of normal hazards and taking appropriate precautions. Tr. 512. Plaintiff had mild limitations in understanding, remembering or applying complex directions and instructions; and sustaining concentration and

performing tasks at a consistent pace. Tr. 512. Finally, Dr. Ippolito found that Plaintiff had moderate limitations in sustaining an ordinary routine and regular attendance at work; regulating her emotions and controlling her behavior; and maintaining her well-being. Tr. 512.

The ALJ explained that he found Dr. Ippolito's opinion only partially persuasive because her assessment that Plaintiff would have moderate limitations in her ability to sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain wellbeing were not supported by the record, especially without any engagement in mental health treatment and no record of complaints about significant deficits in her mood or difficulty getting along with others. Tr. 26. Furthermore, noted the ALJ, the state agency consultants reviewed Dr. Ippolito's opinion and determined that Plaintiff's depressive disorder was not a severe impairment. *Id*. The ALJ ultimately found the state agency consultants' review of the record more persuasive than Dr. Ippolito's single evaluation. *Id*. Accordingly, the ALJ reasonably concluded that the record supported none or mild limitations, but not the moderate limitations assessed by Dr. Ippolito. *Id*.

Notably, state agency medical consultants are highly qualified physicians who are also experts in social security disability evaluation, and their opinions are among those an ALJ will consider. 20 C.F.R. § 440.1513a(b)(1); *see Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.")). Additionally, these non-examining sources may constitute substantial evidence in support of an ALJ's decision. *See Frye ex rel. A.O. v. Astrue*, 485 F.App'x 484, 487 (2d Cir. Jun. 13, 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (ALJ not required to accept the opinion of a treating physician when considering the opinion's consistency with the

evidence); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

Furthermore, as noted above, an ALJ is free to reject portions of medical opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (an ALJ is not bound to include in the RFC finding every specific limitation assessed by a consultative examiner, and could, instead, exercise discretion in reviewing the record evidence in its totality); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (consultative examiner's opinion largely supported the ALJ's RFC determination even if ALJ did not credit all of the consultant's findings); *Veino*, 312 F.3d at 588 (an ALJ has discretion to accept or reject various portions of a treating physician's opinion, based upon substantial evidence in the record).

The ALJ reasonably found the opinions of Dr. Blackwell and Dr. Ippolito to be persuasive and partially persuasive, respectively, because their opinion of mild limitations was consistent with the lack of mental health treatment in the record. Tr. 25-26. As previously noted, Plaintiff testified at her administrative hearing that she recently met with a counselor on two occasions, but she could not remember the counselor's last name. Tr. 25, 67-68. Plaintiff also reported to Dr. Ippolito during her examination that she had never had any psychiatric hospitalizations, nor did she see any mental health counselors; however, she reported that she was prescribed psychiatric medication by her primary care doctor. Tr. 509. In fact, she testified at her hearing that she was unable to work due to neck and back pain after an injury, but not due to any mental limitations. Tr. 54-56. Similarly, Plaintiff also told Dr. Ippolito at her consultative examination that she was unable to work due to her back pain, not due to any mental limitations or impairments. Tr. 509.

Although Plaintiff's primary care treatment records from Rania Karam-Bayoumi, M.D. ("Dr. Karam-Bayoumi"), included limited physical examination findings related to Plaintiff's mental

impairments, these examination findings consistently showed that Plaintiff appeared well-developed and well-nourished; was in no acute distress, pleasant, cooperative, alert, and oriented to person, place, and time; had clear conversation, intact judgment and insight, and appropriate mood and affect. Tr. 411, 414, 417, 420, 455-63, 772-790, 1089-93. Furthermore, as the ALJ indicated, Dr. Karam-Bayoumi noted on two occasions that although Plaintiff had a history of depression and anxiety, her condition was stable on psychotropic medications, which the record indicates she had been taking for 10-15 years. Tr. 25, 463, 1090. Similarly, Dr. Ippolito observed that Plaintiff was well-groomed, cooperative, and oriented to person, place, and time; she had adequate social skills and language, appropriate eye contact, fluent speech, a dysphoric affect, fair insight and judgment, coherent thought processes, and no hallucinations, delusions, or paranoia; and average cognitive functioning. Tr. 511-12.

In addition, the ALJ properly applied the special psychiatric review technique for the evaluation of mental impairments. Tr. 26-27. *See* C.F.R. § 404.1520a. In accordance with the regulations, the ALJ properly considered Plaintiff's functioning in the four broad areas of mental functioning: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3). The ALJ determined that Plaintiff had no more than mild limitations in any of the four functional areas, and her mental impairments were, thus, non-severe. Tr. 26-27; *see* 20 C.F.R. § 404.1520a(d)(1); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (noting that if the degree of limitation in each of the first three areas of the psychiatric review technique is rated "mild" or better, and no episodes of decompensation are identified, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits).

The ALJ explained that Plaintiff takes her medication daily, had average cognitive functioning, was cooperative on examination, keeps in touch with relatives, did not allege any difficulty with attention or concentration, performed light chores such as cooking, had no issues with personal grooming, and takes care of her disabled husband. Tr. 26-27. Thus, in accordance with the regulations,

14

given the lack of evidence of more than "mild" limitations in any of the first three functional areas, and the lack of evidence of any episodes of decompensation, the ALJ properly concluded that Plaintiff's mental impairments were not severe. Tr. 26-27; *see* 20 C.F.R. § 404.1520a(d)(1) (2016).

It is true that an "RFC determination must account for limitations imposed by both severe and non-severe impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order); *see also Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 280 (S.D.N.Y. 2019) ("[T]he ALJ must take into account the cumulative effects of ailments, including those that are non-severe.")). However, a "non-severe" impairment is, by definition, a condition which causes only a "slight abnormality" which would have "no more than a minimal effect on an individual's ability to work." *Cardoza*, 353 F. Supp. 3d at 280. Here, Plaintiff failed to produce evidence indicating that her mental impairments were sufficiently "severe" to impose more than a "minimal effect" on her ability to work. *See Jones v. Comm'r of Soc. Sec.*, 2018 WL 3829119, at *2-3 (W.D.N.Y. Aug. 13, 2018) (rejecting step two argument because plaintiff failed to show how the claimed impairment "impacted his ability to perform work-related functions"); *see also Sherrill B. v. Comm'r of Soc. Sec.*, No. 17-CV-754, 2018 WL 4150881, at *9 (N.D.N.Y. Aug. 30, 2018) ("Because the ALJ considered the objective medical evidence, Plaintiff's daily activities and the hearing testimony in determining that Plaintiff's diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence.").

Based on the foregoing, the ALJ reasonably did not include any mental limitations in the RFC. The ALJ's conclusion was reasonable in this case, given that Plaintiff had no history of any psychiatric hospitalizations; never sought any mental health treatment; and received her psychiatric medications from her primary care provider, who noted that her depression was stable. Tr. 25-26, 463, 509, 1090. Moreover, Plaintiff testified at her hearing that she was unable to work due to neck and back pain after an injury, not due to any mental limitations or impairments. Tr.

54-56. Similarly, Plaintiff told Dr. Ippolito at her consultative examination that she was unable to work due to her back pain, but not due to any mental limitations or impairments. Tr. 509. Accordingly, the ALJ properly evaluated the opinion evidence and other medical evidence of record, and the Court finds no error.

Although Plaintiff complains about the ALJ's consideration of the opinion evidence, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Furthermore, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

In addition to considering Plaintiff's treatment records and the medical opinion evidence, the ALJ in this case properly considered Plaintiff's daily activities, noting that during the relevant period, she was able to maintain her own personal grooming, shower, clean the house, do laundry, prepare meals on a daily basis, wash dishes, mow the lawn, shop, watch television, pay her bills, and take care

of her dogs and disabled husband. Tr. 25-27, 227-29, 512. *See* 20 C.F.R. § 404.1529(c)(3)(i), (adjudicator properly considers the individual's daily activities); SSR 16-3p; *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that Plaintiff's activities of daily living was an important indicator of her true level of physical functioning).

The ALJ also discussed Plaintiff's treatment modalities. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (adjudicator properly considers the treatment modalities utilized, and the effectiveness of treatment to relieve pain and other symptoms). As previously discussed, the ALJ noted that Plaintiff did not receive mental health treatment during the relevant period and received her psychotropic medications from her primary care provider, who noted that Plaintiff's depression was stable. Tr. 25-26, 509, 463, 1090. Accordingly, the ALJ reasonably concluded that Plaintiff's lack of engagement in mental health treatment and stability on medication did not support significant limitations in her ability to perform basic work activities. Tr. 25. T

he fact that a plaintiff received only conservative treatment is evidence that can weigh against allegations of disabling symptoms. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008). Similarly, a claimant's allegations of disability are undermined by a failure to seek regular treatment for the claimant's allegedly disabling conditions. *Naval v. Astrue*, 303 F.App'x 18, 20 (2d Cir. Dec. 16, 2008) citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989); *see also Salvaggio v. Apfel*, 23 F.App'x 49, 51 (2d Cir. Nov. 6, 2001) ("the result of the plaintiff's choice to seek only minimal medical attention of her symptoms . . . supports the finding that the plaintiff was not under a disability"). Thus, Plaintiff's daily activities and treatment modalities do not support a finding that Plaintiff's condition is disabling. Accordingly, the ALJ properly considered the totality of the evidence in the record and properly weighed the medical opinion evidence when determining Plaintiff's RFC finding, and in concluding that mental limitations were not warranted in the RFC.

Plaintiff also argues that the ALJ erred in finding that she was capable of past relevant work. *See* ECF 10-1 at 15-16. At step four, the ALJ determined that Plaintiff could perform her past relevant work as a Credit Loan Collections Supervisor and Collections Clerk. Tr. 34-35, 80-81. 20 C.F.R. § 404.1560(b); SSR 96-8p, 1996 WL 374184. In so doing, the ALJ properly acted within his discretion in consulting a vocational expert. 20 C.F.R. § 404.1560(b)(2) ("a vocational expert may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work"). In this case, the ALJ asked the VE to assume an individual with the same vocational profile and RFC as Plaintiff. Tr. 79-80. The expert testified that such an individual could perform Plaintiff's past relevant work as a Credit Loan Collections Supervisor and a Collections Clerk. Tr. 34-35, 79-80.

Plaintiff contends that the ALJ was required to make an alternative step five finding based on the VE's response to an additional assumption regarding "any unskilled jobs that would fit within the last hypothetical." Tr. 81. Plaintiff contends that because these other unskilled jobs "require frequent reaching, which is outside the bounds of the RFC the ALJ found," the ALJ was required to include an alternative step five finding to account for this limitation. *See* ECF No. 10-1 at 15. However, Plaintiff's argument that the step five finding did not adequately account for this purported limitation is merely a rehash of her challenge to the ALJ's RFC finding. As discussed above, the ALJ properly evaluated the opinion evidence of record in determining that Plaintiff's mental impairments were not severe at step two. Furthermore, Plaintiff has failed to provide any evidence that her mental impairments would have any more than a minimal effect on her to work. *See Cardoza*, 353 F. Supp. 3d at 280. Thus, the ALJ's RFC finding accounts for all of Plaintiff's credibly established limitations, and the record does not compel any reasonable factfinder to have assessed greater restrictions. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (stating that under the

substantial evidence standard of review, it is not enough for claimant to offer a different interpretation of the evidence, he must demonstrate that no reasonable factfinder could have weighed the evidence as the ALJ did in his decision).

The ALJ may rely on the opinion of the vocational expert when, as here, the hypothetical posed is supported by substantial evidence. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (court found that ALJ properly posed hypothetical question to the vocational expert when that hypothetical was based on ALJ's correct RFC assessment); *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (same). Accordingly, because the VE opined that Plaintiff could perform her past relevant work, the ALJ did not err.

For all the reasons discussed above, the Court finds that substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE